UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                           :

UNITED STATES OF AMERICA,          :

                           :

                           :          06 Cr. 982 (S-2) (BSJ)

   - against -                   :

                           :

MICHAEL ANNUCCI,                 :
      also known as " Mickey Annucci," and  :
FRANK PROSCIA,                   :
      also known as "Frankie Proscia,"     :
                           :

         Defendants.            :
------------------------------------------------------------- x


## DEFENDANT FRANK PROSCIA'S MEMORANDUM OF LAW
## SUBMITTED IN SUPPORT OF HIS PRETRIAL MOTIONS


CHARLES A. ROSS & ASSOCIATES, LLC
*Attorneys for defendant Frank Proscia*
111 BROADWAY, SUITE 1401
NEW YORK, NEW YORK 10017
212.616.3030 (T)
212.616.3031 (F)

CHARLES A. ROSS
CHRISTOPHER L. PADURANO

# TABLE OF CONTENTS

I.   INTRODUCTION                                                    1

II.  STATEMENT OF FACTS                                              3

III. ARGUMENT                                                        4

     POINT 1   Frank Proscia Should Be Granted a Severance and a
               Trial Separate and Apart from His Co-Defendant        4

               A.  The Court Should Grant Mr. Proscia's Request
                   to Sever His Trial from That of His Co-Defendant
                   Because a Joint Trial Will Cause Him Undue
                   Prejudice and Deprive Him of a Fair Trial          4

                   1.  The Number of Defendants and Number
                       of Counts                                      5

                   2.  The Complexity of the Indictment               6

                   3.  The Estimated Length of the Trial              6

                   4.  Disparities in the Degrees of Involvement
                       by Defendants in the Overall Scheme            6

                   5.  Possible Conflicts Between Various Defense
                       Theories Should Cause This Court to Grant a
                       Severance Based Upon Antagonistic Defenses

                       a.  The Court Should Grant Mr. Proscia's
                           Request to Sever His Trial from That of
                           His Co-Defendant Due to the Possibility
                           of His Co-Defendant Providing Exculpatory
                           Testimony                                  9

                   6.  Prejudice Resulting from Evidence Admissible
                       as to Some Defendants, But Not Others         11

                       a.  Any Limiting Instructions the Court Crafts
                           in a Joint Trial Will Not Remove the Taint of
                           "Spillover Prejudice" as to Frank Proscia  12

i

POINT 2        Count Two of the Indictment Fails to Allege a Crime and        13
               Should Be Dismissed

POINT 3        The Court Should Order the Government to Strike Unnecessary
               and Prejudicial Surplusage from the Indictment        14

POINT 4        The Court Should Order the Government to Provide Frank
               Proscia with a Bill of Particulars        15

POINT 5        The Government Should Immediately Disclose the Requested
               and Required Discovery        16

               A.    The Court Should Order the Government to Provide
                     Any Item Within Its Possession from Its Civil Case
                     Against the District Council That Is Material to
                     Preparing Frank Proscia's Defense        16

               B.    The Court Should Order the Government to Provide
                     Any and All *Brady* and *Giglio* Material        20

               C.    The Court Should Order the Government to Provide
                     Any and All Prior Statements Under 18 U.S.C. § 3500
                     and Federal Rule of Criminal Procedure 26.2        21

POINT 6        The Government Should Immediately Disclose Prior Bad Act
               Evidence That It Intends to Introduce at Trial Pursuant to
               Federal Rule of Evidence 404(b)        21

POINT 7        Frank Proscia Moves to Join in and Adopt by Reference the
               Motions of His Co-Defendant        22

POINT 8        Frank Proscia Requests Permission to Make Additional
               Motions That May Become Necessary as a Result of
               Further Discovery        22

IV.    CONCLUSION        22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                      :

UNITED STATES OF AMERICA,         :
                                        :

                                        :      **06 Cr. 982 (S-2) (BSJ)**

     - against -           :

                                        :

MICHAEL ANNUCCI,              :
     also known as " Mickey Annucci," and :
FRANK PROSCIA,                 :
     also known as "Frankie Proscia,"   :

                                          :

               Defendants.      :
-------------------------------------------------------------- x

## DEFENDANT FRANK PROSCIA'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS PRETRIAL MOTIONS

## I.     INTRODUCTION

Frank Proscia is charged in a superseding indictment ("indictment") along with his co-defendant, Michael Annucci. Mr. Proscia, a 52-year-old husband and father, is charged with joining a pre-existing conspiracy the government alleges began in or around July 2001 and with purportedly violating the objects of the conspiracy – embezzling from an employee benefit plan and committing wire fraud. Mr. Proscia is named in three of the four counts of the indictment.[1]

Count One alleges that Messrs. Annucci and Proscia, along with others known and unknown, conspired to defraud the District Council of New York City and Vicinity of the U.B.C.J. ("District Council") and the District Council Benefit Funds (which provide life insurance, hospitalization, medical care, pension, and vacation benefits to union members) from July 2001 through June 2006 by, among other things, submitting false shop steward reports that

---

[1] Count Four, in which Mr. Proscia is not a named defendant, alleges that Mr. Annucci, while serving as a shop steward, unlawfully accepted payments of more than $10,000 in "wages" for hours he never worked and to which he was not entitled from a contractor that had signed a collective bargaining agreement ("CBA") with the Union Brotherhood of Carpenters and Joiners ("U.B.C.J.").

underreported the hours worked by carpenters employed by L&D Installers, Inc. ("L&D") and otherwise aided and abetted L&D's violation of the CBA it entered into with the District Council. Messrs. Annucci and Proscia allegedly conspired, along with others known and unknown, to violate 18 U.S.C. §§ 664 and 1343. *Id.* at ¶¶ 6-10.

Count Two charges Mr. Proscia with aiding and abetting the embezzlement of an employee benefit plan in violation of 18 U.S.C. §§ 664 and 2. Specifically, the government alleges that from July 2001 through June 2006, Messrs. Proscia and Annucci, along with others known and unknown, participated in a scheme whereby each, while serving as shop steward at L&D's jobsite at 11 Madison Avenue, New York, New York, submitted false shop steward reports that underreported the hours worked by carpenters employed by L&D, and thus aided and abetted (a) L&D's violations of the terms of the CBA between L&D and the U.B.C.J., and (b) L&D's evasion of contributions to the District Council Benefit Funds. *Id.* at ¶¶ 11-12.

Count Three alleges that Mr. Proscia aided and abetted the commission of wire fraud in violation of 18 U.S.C. §§ 1343 and 2. Specifically, the government charges that Messrs. Proscia and Annucci, from July 2001 through June 2006, along with others known and unknown, engaged in L&D's fraudulent scheme to defraud the District Council Benefit Funds and aided and abetted wire commissions between New York and New Jersey in furtherance of that scheme. They did this by purportedly (i) transferring by means of wire timesheets from the 11 Madison Avenue jobsite in Manhattan so that L&D's owners could determine which carpenters' names and hours appearing on those timesheets would be omitted from their respective weekly shop steward reports, and (ii) transferring by means of wire fraudulent remittance reports from L&D to the District Council Benefit Funds. *Id.* at ¶¶ 13-14.

2

## II.    <u>STATEMENT OF FACTS</u>

The facts relevant to the issues raised in this motion are set forth in the accompanying affirmation of Charles A. Ross, Esq., and the exhibits appended thereto, which are incorporated herein by reference and made part thereof.

III.    **ARGUMENT**

POINT 1

**FRANK PROSCIA SHOULD BE GRANTED A SEVERANCE AND A TRIAL
SEPARATE AND APART FROM HIS CO-DEFENDANT**

A.     **The Court Should Grant Mr. Proscia's Request to Sever His Trial From
That of His Co-Defendant Because a Joint Trial Will Cause Him Undue
Prejudice and Deprive Him of a Fair Trial**

Rule 8(b) of the Federal Rules of Criminal Procedure ("F.R.Crim.P.") states that
"[t]wo or more defendants may be charged in the same indictment or information if they are
alleged to have participated in the same act or transaction or in the same series of acts or
transactions constituting an offense or offenses." *Zafiro v. United States,* 506 U.S. 534, 537, 113
S.Ct. 933, 122 L.Ed.2d 317 (1993) (quoting F.R.Crim.P. 8(b)).   In *Zafiro,* the Court also
acknowledged that although "[t]here is a preference in the federal system for joint trials of
defendants who are indicted together ... joinder, even when proper under Rule 8(b), may
prejudice either a defendant or the Government." *Id.* at 538.   Accordingly, F.R.Crim.P. 14
informs us that "[i]f the joinder of offenses or defendants in an indictment ... appears to
prejudice a defendant or the government, the court may order separate trials of counts, sever the
defendants' trials, or provide for any other relief that justice requires."   Quoting F.R.Crim.P.
14(a).

The Court in *Zafiro* observed that Rule 14 does not automatically require
severance whenever prejudice is shown; rather, Rule 14 leaves it up to the district court to craft
the relief, if any, for an aggrieved party. *Zafiro,* 506 U.S. at 538-39.   However, the Court opined
that even when defendants have been properly joined pursuant to Rule 8(b), "a district court
should grant a severance under Rule 14 only if there is a serious risk that a joint trial would

4

compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539.

Courts have considered the following non-exhaustive list of factors in determining whether a severance is warranted:

1.    the number of defendants and the number of counts;

2.    the complexity of the indictment;

3.    the estimated length of the trial;

4.    disparities in the degrees of involvement by defendants in the overall scheme;

5.    possible conflict between various defense theories; and

6.    prejudice resulting from evidence admissible as to some defendants, but not others.

*United States v. Bennett,* 485 F.Supp.2d 508, 511 (S.D.N.Y. 2007) (citations omitted).    An analysis of these factors here militates in favor of separate trials.

### 1.    The Number of Defendants and Number of Counts

Although there are only two defendants and four counts in the indictment, the conduct with which the government charges Mr. Proscia spans almost five years, beginning in July 2001.  Upon information and belief, Mr. Proscia's first day on the job as shop steward at L&D's jobsite at 11 Madison Avenue was February 9, 2006.  In the case of a joint trial, "spillover prejudice" is a real concern.  *See e.g., United States v. Williams.* 181 F.Supp.2d 267, 301-02 (S.D.N.Y. 2001) (citing *United States v. Salameh,* 152 F.3d 88, 115 (2d Cir. 1998)).  In other words, a jury might hold Mr. Proscia criminally responsible for acts allegedly committed by others prior to February 9, 2006, merely because he is in the same Local[2] as his co-defendant.

---

[2] A "Local" is commonly referred to as "[t]he unit of labour organization formed in a particular locality, through which members participate directly in the affairs of their organization, such as the election of local officers, the

## 2.    The Complexity of the Indictment

Here, the government has produced thousands of pages of discovery in an attempt to demonstrate that Mr. Proscia embezzled from an employee benefit plan and committed wire fraud. Although the indictment here may not be as complex as the fraud the government alleges occurred in *Bennett, supra,* the scope of discovery produced in the instant matter is voluminous. A clear majority of the discovery precedes Mr. Proscia's tenure as shop steward, which began on or about February 9, 2006. Thus, in a joint trial, Mr. Proscia would have to defend against the five-year conspiracy the indictment alleges. Having him do so is unfair and prejudicial and would deprive him of his right to a fair trial.

## 3.    The Estimated Length of the Trial

Although the estimated length of a joint trial here would not approach the four-month benchmark for severance set by the Second Circuit in *United States v. Casamento,* 887 F.2d 1141, 1152, (2d Cir. 1989), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), the length of a trial is but one factor a court should consider in determining whether a severance is appropriate. *See Bennett,* 485 F.Supp.2d at 515. Since Mr. Proscia was a supposed late-comer to an already existing conspiracy, the presentation of proof against him in a separate trial would be much smaller that that against his co-defendant. Thus, a separate trial as to Mr. Proscia would be considerably shorter than that for Mr. Annucci.

## 4.    Disparities in the Degrees of Involvement By Defendants in the Overall Scheme

If tried jointly with Mr. Annucci, Mr. Proscia would face a lengthy and complex trial involving thousands of documents and dozens and dozens of witnesses. Upon

---

financial and other business matters of a local, relations with their employer(s), and the collection of members' dues." http://broadway.sfn.saskatoon.sk.ca/business/sdlc/jl.html (last visited August 28, 2007).

information and belief, Mr. Proscia is charged neither with being the leader of the purported conspiracy nor with lining his pockets with the fruits of the alleged embezzlement.  We are unaware of any proof that he was bribed or offered any monetary inducement whatsoever to undertake the so-called criminal activity which the government claims he committed. Additionally, Frank Proscia was not named shop steward at 11 Madison Avenue until February 2006.  The government, however, charges that the alleged conspiracy in which it claims Mr. Proscia was a member ended in June 2006.  Upon information and belief, Mr. Proscia was a shop steward for only about three months when the prosecution claims the embezzlement scheme was active.

On the other hand, Mr. Proscia's predecessor and co-defendant, Mr. Annucci, was shop steward for almost five years.  Almost all the proof at a joint trial would be directed against Mr. Annucci.  The government will no doubt claim that a joint trial would be more expeditious as it would be forced to repeat time-consuming proof of the conspiracy against Mr. Proscia at a separate trial.  However, as a condition of severance, Mr. Proscia would consider entering significant proof stipulations, which could substantially shorten the length of his separate trial.  Thus, the issue of replication of court resources is a neutral one at best. Although a joint trial of both Messrs. Annucci and Proscia would not, in and of itself, violate the United States Constitution, the disparities in the alleged degrees of involvement of Messrs. Proscia and Annucci militate in favor of separate trials.

### 5.  Possible Conflicts Between Various Defense Theories Should Cause This Court to Grant a Severance Based Upon Antagonistic Defenses

Although "[t]he mere fact that codefendants seek to place blame on each other is not the sort of antagonism that requires a severance," *United States v. Serpoosh,* 919 F.2d 835, 837 (2d Cir. 1990) (citations omitted), if "'the conflict is so irreconcilable' that

acceptance of one defendant's defense will lead the jury to convict the other," *id.* at 837-38 (citation omitted), then a severance may be entirely appropriate. The Second Circuit has determined that a severance is required when "'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.'" *Id.* at 838 (citation omitted).

Here, Mr. Proscia's strategy at trial could resemble that which was presented in *Serpoosh, supra.* There, on the eve of trial, one of the co-defendants, Mr. Qureshi, filed a motion to sever his trial from that of his co-defendant, Mr. Yousefzai (whose attorney joined in the motion at the hearing on the severance motion). Mr. Qureshi argued that trying him and Mr. Yousefzai together would be unfairly prejudicial since he planned to present mutually antagonistic defenses. *Id.* at 836. The district court denied the motion. Each defendant then testified in his own defense and they each described themselves "as the unwitting dupe of the other." *Id.* at 836-37. Furthermore, the lawyers for each defendant, in summation, attacked the credibility of the other defendant, as well as their version of the events in question. *Id.* at 837. Both defendants were convicted and on appeal, argued that they should not have been tried jointly.

The Second Circuit agreed and held that the district court's denial of Messrs. Qureshi's and Yousefzai's severance motions based on mutually antagonistic defenses resulted in substantial prejudice. The Court commented that the prejudice caused by the defendants' joint trial was evident in that "[b]oth defendants gave detailed and mutually exclusive explanations of their conduct ..." *Id.* at 838. Moreover, the Court found that "[t]he damage done was greatly enhanced by the sparring between counsel for the two defendants in

which each characterized the other defendant as a liar who concocted his story to escape blame."
*Id.*

Certainly, the volume of proof against Mr. Annucci will far exceed that to be admitted against Mr. Proscia. A potential defense available to Mr. Proscia is blaming Mr. Annucci and claiming that he had been duped by him and by others allegedly involved in the conspiracy. We urge the court to consider granting a severance in order to permit Mr. Proscia to actively pursue and explore this defense. If the Court requires a more extensive offer of proof in order to consider a severance on antagonistic defense grounds, we respectfully request permission to raise this issue closer to trial, when defense strategies solidify.

    a.    **The Court Should Grant Mr. Proscia's Request to Sever His Trial From That of His Co-Defendant Due to the Possibility of His Co-Defendant Providing Exculpatory Testimony**

In *United States v. Finkelstein,* 526 F.2d 517 (2d Cir. 1975), *cert. denied sub nom. Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976), the Second Circuit "identified four factors to be weighed in determining whether to sever the trial of a defendant who contends that a co-defendant would offer exculpatory testimony at a separate trial. These are as follows:

    (1)    the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege;

    (2)    the degree to which exculpatory testimony would be cumulative;

    (3)    the counter arguments of judicial economy; and

    (4)    the likelihood that the testimony would be subject to substantial, damaging impeachment."

9

*United States v. Sliker,* 751 F.2d 477, 496 (2d Cir. 1985) (citing *Finkelstein,* 526 F.2d at 523-24).

Here, there is a distinct possibility that Mr. Annucci can provide exculpatory testimony at Mr. Proscia's trial. Indeed, Mr. Annucci has already informed the District Council investigators that he never spoke to Frank Proscia about the 11 Madison Avenue jobsite prior to Mr. Proscia replacing him as shop steward. *See* Exhibit A. This testimony could very well negate one of the elements of the embezzlement charge – intent.[3]

It is highly unlikely that Mr. Annucci will testify in this matter and waive his Fifth Amendment privilege. Thus, it is imperative that this Court grant Mr. Proscia a severance in order that he may present Mr. Annucci's exculpatory testimony at his separate trial.

Second, assuming that Mr. Annucci does not testify in his defense at a joint trial, the exculpatory testimony he might provide at a trial of Mr. Proscia alone would not by itself be cumulative, since there is no other way to get Mr. Annucci's statements into evidence except through his own testimony. If a severance were ordered and Mr. Annucci were either convicted or acquitted at his own trial, there would be a greater chance that he would then testify at Mr. Proscia's later trial.

Third, although we recognize the utility of trying multiple defendants at the same time, when one co-defendant may be able to provide testimony exculpating another co-defendant, judicial economy ought to give way to that co-defendant receiving a fair trial. A severance is the only way to ensure such a fair trial.

---

[3] The elements of embezzlement from employee benefit plan include the unauthorized taking or misappropriation of union benefit plan funds with specific criminal intent. *Young v. West Coast Indus. Relations Ass'n, Inc.,* 763 F.Supp. 64, 74 (D.Del. 1991), *aff'd* 961 F.2d 1570. In order for act to be criminal under 18 U.S.C. § 664, the act must be willful, which means an act done with a fraudulent intent or a bad purpose or an evil motive. *United States. v. Andreen,* 628 F.2d 1236, 1241 (9th Cir. 1980); *see also United States v. Somerstein,* 971 F.Supp. 736, 749-50 (E.D.N.Y. 1997).

Fourth, while it is possible in a joint trial that Mr. Annucci's anticipated testimony could be subject to damaging impeachment, if a severance were granted and Mr. Proscia was tried after Mr. Annucci, Mr. Annucci's guilt or innocence will have already been determined and the Fifth Amendment concerns attendant with testifying at a joint trial will be dissipated and the chances of his testifying at Mr. Proscia's later trial are greater.

**6.    Prejudice Resulting From Evidence Admissible as to Some Defendants, But Not Others**

Here, a joint trial compromises Mr. Proscia's right to a fair trial and will prevent the jury from making a reliable judgment about his guilt or innocence.  Mr. Proscia should also be granted a separate trial from that of Mr. Annucci because a joint trial will cause him undue prejudice.  Mr. Annucci is alleged to have participated in a conspiracy lasting over four years.  Mr. Prosica, on the other hand, purportedly joined this pre-existing conspiracy on or about February 9, 2006, when he was named shop steward of the 11 Madison Avenue jobsite. Thus, if Messrs. Annucci and Proscia were tried jointly, Mr. Proscia would be required to sit through countless hours of testimony about events and documents with which he had absolutely nothing to do.  This will undeniably create spillover prejudice so great that he will be denied a fair trial.  Such intense prejudice mandates a separate trial.  Moreover, a trial of Mr. Proscia alone would be relatively brief compared to that of his co-defendant, Mr. Annucci.  The prejudice emanating from this joint trial is real and substantial and requires the Court to grant Mr. Proscia's motion to sever.

a.    **Any Limiting Instructions the Court Crafts in a Joint Trial Will Not Remove the Taint of "Spillover Prejudice" as to Frank Proscia**

In *Zafiro,* 506 U.S. at 539, the Supreme Court noted that the risk of prejudice varies with the facts of each particular case, and that although courts may find the risk of prejudice high in one case, less intrusive measures, such as limiting instructions, may be sufficient to cure any risk of prejudice in another case.

Here, any limiting instructions the Court could conceivable craft in a joint trial would be insufficient to cure the taint of "spillover prejudice." The prejudicial spillover that would accrue to Mr. Proscia by exposing a jury to weeks of terribly prejudicial evidence could not be adequately contained by any limiting instructions the Court might properly be required to give the jury at various times throughout the proceedings.

This case is distinguishable from *United States v. Perez,* 940 F.Supp. 540 (S.D.N.Y. 1996). There, Messrs. Ramos and Perez were both indicted for conspiring to murder and for the substantive offense of murder. Mr. Perez was also indicted for the attempted murder of another person. Both co-defendants were alleged to have been members of the Latin Kings, a criminal organization purportedly involved in, among other things, murder and narcotics trafficking. Mr. Ramos argued that a severance was appropriate since evidence admissible in a joint trial, but otherwise inadmissible against him would have a prejudicial impact on his defense, thereby precluding a fair trial. *Id.* at 546.

In denying Mr. Ramos' motion to sever, United States District Court Judge Robert W. Sweet determined that limiting instructions to the jury would adequately prevent whatever prejudice might result from the introduction of such evidence at a joint trial. *Id.* at 546-47 (citations omitted); *but see United States v. James,* 2007 WL 1579978, slip op. at

12

\*3 (E.D.N.Y. 2007) (United States District Court Judge Sterling Johnson, Jr. observing that a limiting instruction is not a cure-all to undue prejudice and subsequently denied the government's motion to introduce evidence of a co-defendant's uncharged crimes).

Here, no matter how many times the Court admonishes the jury to consider the evidence separately against Messrs. Annucci and Proscia in a joint trial, the chance is too great that the jury would ignore those admonishments and apply the voluminous documentary evidence and witness testimony against Mr. Annucci to Mr. Proscia. No limiting instruction could erase from the jurors' minds, among other matters, the mass of paperwork they would never see in a trial of Mr. Proscia alone. The potential for prejudice is all the more heightened when, as in this case, Mr. Proscia is charged alongside an acquaintance and fellow union member.

Accordingly, allowing Mr. Proscia to be tried in a joint trial severely prejudices him to the extent that it would deny him the opportunity to obtain a fair trial.

## POINT 2

### COUNT TWO OF THE INDICTMENT FAILS TO ALLEGE A CRIME AND SHOULD BE DISMISSED

We recognize that the Court has already denied Mr. Annucci's previously submitted motion to dismiss Count Two of the first superseding indictment, *see United States v. Annucci*, 2007 WL 1310156, slip op. at \*7-8 (S.D.N.Y. 2007). Mr. Annucci's motion to dismiss was based on the argument "that L&D's failure to remit contributions to the employee benefit funds [cannot] constitute embezzlement of plan 'assets' for purposes of criminal liability under Section 664 because the underlying agreements between L&D and the union provide that contributions do not become 'assets' of the plan until they are received." *Id.* As such, because the "assets" never made their way to the pension benefit fund, there is no way that Mr. Annucci, or Mr.

Proscia, for that matter – could have aided or abetted the embezzlement of the plan's "assets." Rather than rehash the arguments posited by Mr. Annucci's counsel in this motion and cognizant that the Court has already ruled on his motion, we respectfully join in Mr. Annucci's motion and request a ruling from the Court in order to preserve this argument.

## POINT 3

### THE COURT SHOULD ORDER THE GOVERNMENT TO STRIKE UNNECESSARY AND PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT

Federal Rule of Criminal Procedure 7(d) permits a district court to delete extraneous matter, or "surplusage," from an indictment or information if the defendant moves for such relief. Moreover, "motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Mulder,* 273 F.3d 91, 99 (2d Cir. 2001); *see also United States v. Mason,* 2007 WL 541653 at *5, slip op. (S.D.N.Y. 2007). However, "[g]enerally ... aliases are stricken only if they constitute prejudicial surplusage and will not assist the trier of fact in identifying a particular defendant or defendants." *United States v. Bernard*, 1998 WL 241205, at *6 (D. Conn. 1998) (citing *United States v. Murgas*, 967 F.Supp. 695, 710 (N.D.N.Y.1997)).

Here, the government suggests that Messrs. Annucci's and Proscia's "aliases" are Mickey and Frankie, respectively. However, rather than being an alias, Frankie is clearly a shortened form of Frank. Allowing the government to preserve the purported aliases would unfairly prejudice Mr. Proscia in that there is a possibility that a jury might somehow infer criminal liability on Mr. Prosica solely by the fact that he has a supposed alias or the jury might view him in a negative light if he goes by an alleged alias. Since the shortened form "Frankie" has absolutely no relevance to the offenses charged, it should be stricken from the indictment.

14

In short, the two defendants on trial possess relatively common first names – Michael and Frank. This is not a case where there are numerous defendants with complicated names with which a jury might be unfamiliar. In such a case, the use of aliases might assist the trier of fact in identifying a particular defendant and it might make more sense to maintain the use of aliases in an information or indictment. However, allowing such suplusage in this case would serve to unfairly prejudice Mr. Proscia as it has no relevance to the crimes charged in the indictment and is inflammatory and prejudicial.

## POINT 4

### THE COURT SHOULD ORDER THE GOVERNMENT TO PROVIDE FRANK PROSCIA WITH A BILL OF PARTICULARS

Where an indictment is drawn in general terms, a defendant may move, pursuant to Federal Rule of Criminal Procedure 7(f), for a bill of particulars, requiring that the government set forth "the specific allegations of the offense charged." *United States v. Wozniak,* 126 F.3d 105, 110 (2d Cir. 1997). A bill of particulars is intended to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987). The decision to grant a motion for a bill of particulars lies within the discretion of the district court.

Although a bill of particulars should not be used to provide the defendant with "evidentiary detail" about the government's case, *United States v. Torres,* 901 F.2d 205, 234 (2d Cir. 1990), if it is otherwise appropriate, a bill of particulars should not be denied simply because it would disclose the government's evidence or theory of the case. *United States v. Barnes,* 158 F.3d 662, 665 (2d Cir. 1998).

15

Here, although counsel for Mr. Proscia and the government entered into informal discussions regarding Mr. Proscia's alleged involvement in the charged offenses, it is still formally unclear whether Mr. Proscia will have to defend himself against an almost five-year conspiracy, as opposed to an approximately four-month conspiracy (the period in which he was the shop steward at 11 Madison Avenue). As the Court may recall, Count One of the indictment, in which Mr. Proscia is a named defendant, charges a conspiracy lasting from July 2001 through June 2006. However, Mr. Proscia was assigned as a shop steward only or about February 9, 2006. Additionally, Count One references only two overt acts that Mr. Proscia allegedly committed in furtherance of the conspiracy. The importance of a limited bill of particulars is heightened in a case such as this where the government has either provided to the defense or made available for inspection literally thousands of pages of documents. Clearly, since Mr. Proscia spent such a short time as shop steward as compared with his co-defendant, a bill of particulars is necessary to allow Mr. Proscia to properly prepare for his defense.

Accordingly, we respectfully request that the Court order the government to provide Mr. Proscia, at the very least, with the date on which he is alleged to have joined the charged conspiracy.

## POINT 5

### THE GOVERNMENT SHOULD IMMEDIATELY DISCLOSE THE REQUESTED AND REQUIRED DISCOVERY

A.    **The Court Should Order the Government to Provide Any Item Within Its Possession from Its Civil Case Against the District Council That is Material to Preparing Frank Proscia's Defense**

Mr. Proscia respectfully requests that the Court order the government to provide him with certain documents that were filed as part of the government's civil case against the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and

16

Joiners of America ("District Council") and individual defendants. *See United States v. District Council, et al.* 90 Cv. 5722 (CSH).

On September 6, 1990, the government filed a civil complaint against the District Council and individual defendants alleging violations of the Racketeering Influenced and Corrupt Organizations ("RICO") Act. The government filed a supplemental complaint on July 16, 1991, and named additional individual defendants. The trial began on September 13, 1993, and continued through October 18, 1993, at which time it was temporarily recessed. On or about March 4, 1994, the government and the District Council entered into a Consent Decree. The settlement provided for a court-appointed trusteeship over the District Council. The trustee (known as the Investigative Reporting Officer or Independent Investigator) thoroughly investigated the District Council and was tasked with, among other things, purging the organization of corrupt practices. The Independent Investigator issued numerous reports to the Honorable Charles S. Haight, United States District Judge for the Southern District of New York, and interviewed many carpenters and union members, some of whom may have information material to the defense. For example, upon information and belief, Gary DiMaria (one of the owners of L&D who is now deceased) may have been deposed in the civil suit.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure provides that

> "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is **within the government's possession**, custody, or control <u>and</u>:
>
> **(i)  the item is material to preparing the defense;**
>
> (ii)  the government intends to use the item in its case-in-chief at trial; or

(iii)  the item was obtained from or belongs to the defendant." (Emphasis added).

A document is material under Rule 16 if it "could be used to counter the government's case or to bolster a defense; information not meeting either of those criteria is not to be deemed material within the meaning of [Rule 16] merely because the government may be able to use it to rebut a defense." *United States v. Finnerty,* 411 F.Supp.2d 428, 431 (S.D.N.Y. 2006) (citation omitted).  A document, put another way, is material if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor." *Id.* (citation omitted).  The court in *Finnerty* noted that conclusory allegations are insufficient to establish materiality and the defendant bears the burden of making a prima facie showing that the documents sought are material to the preparation of the defense.  *Id.* (citation omitted).

Courts have generally required the prosecution to disclose to defendants under Rule 16 those documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution as to be considered part of the prosecution team.  *Id.* at 432 (citations omitted).

Here, the requested documents are material to Mr. Proscia's defense, since they will illuminate the difficulties shop stewards in administering their duties and will assist counsel in negating the intent element of the embezzlement charge.  The requested documents will be helpful in framing a defense, and will allow Mr. Proscia to vindicate his right of confrontation under the Sixth Amendment.

Additionally, the requested documents surely fall within the language of Rule 16 which states that in order to be discoverable, documents must be "within the Government's possession."  This is not a situation where a private or quasi-private organization – such as the

National Association of Securities Dealers ("NASD") or New York Stock Exchange ("NYSE") –

possesses the requested documents. *See, e.g., Finnerty,* 411 F.Supp.2d at 433. Therefore, we

respectfully request the following documents:

(a)   District Council's Memorandum of Law in Opposition to the Government's Motion for Reconsideration (docket entry number 809);[4]

(b)   Affidavits of James Wasserman regarding Eugene Clarke's Pretrial Memorandum (docket entry numbers 800-803);

(c)   Pretrial Memorandum regarding Government's Motion to Enforce Consent Decree (docket entry number 799);

(d)   Government's Memorandum of Law in Support its Motion for Reconsideration (docket entry number 798);

(e)   Pretrial Statement of Michael Forde (docket entry number 797);

(f)   Pretrial Statement of Eugene Clarke (docket entry number 794);

(g)   Defendants' Memorandum of Law in Opposition to Government's Motion for Civil Contempt and accompanying declarations (docket entry numbers 769 – 770);

(h)   Government Memorandum of Law in Support of its Motion for Civil Contempt and accompanying declarations (docket entry numbers 762, 764 – 765);

(i)   Independent Investigator's Report Concerning Shop Steward Assignments Obtained by Local 608 Member John Corrigan and accompanying Exhibit Books (docket entry numbers 712 – 715);

(j)   Report to the District Council of Carpenters Concerning the Operation and Effectiveness of its Anti-Corruption Program (docket entry number 711);

(k)   Ten Interim and Special Interim Reports of the Investigations and Review Officer (docket entry numbers 636, 622, 598, 579, 557, 548, 534, 511, 470, 442);

(l)   Declaration and Agreement regarding Michael Annucci settlement

---

[4] All references to the "docket entry number" refer to the number associated with the filing of the document pursuant to the Electronic Case Filing ("ECF")/Public Access to Court Electronic Records ("PACER") system.

terms (docket entry number 616);

(m)    Materials regarding John Langaker's grant of immunity pursuant to 18 U.S.C. §§ 6002-6003 (docket entry numbers 392, 393, 394);

(n)    District Council and Government's witness lists (docket entry numbers 350, 354);

(o)    Declaration of Harvey Tuerack regarding corruption in the union (docket entry number 329);

(p)    Declaration of Abraham Kores regarding payoff to business agent of the carpenters union (docket entry number 328);

(q)    Declaration of Michael Armstrong regarding activities as independent counsel (docket entry number 326);

(r)    Declaration of Salvatore Gravano regarding mob influence over the union (docket entry number 324);

(s)    Affidavit of Michael F. Armstrong regarding summary of his activities as Independent Counsel (docket entry number 319):

(t)    Deposition transcripts of Gary DiMaria, if they exist (*see e.g.,* docket entry numbers 172, 178).

**B.**    **The Court Should Order the Government to Provide Any and All *Brady* and *Giglio* Material**

The government is required to disclose various information and items of evidence "[u]pon request of the defendant." F.R.Crim.P. 16(a). Moreover, *Brady v. Maryland,* 373 U.S. 83, 87 (1963), and its progeny, mandates that a criminal defendant's right to due process of law forbids a prosecutor from withholding "evidence favorable to an accused upon request where the evidence is material whether to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." We respectfully request that the Court order that the government provide Mr. Proscia with all *Brady* and *Giglio* material.

20

C.     **The Court Should Order the Government to Provide Any and All Prior Statements Under 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2**

Section 3500 of Title 18 of the United States Code requires the government, "on motion of the defendants," to disclose a government's witness' prior statements that are in the government's possession and relate to the subject matter of the witness' direct testimony. *See also* F.R.Crim.P. 26.2. We make this request now in light of the Court's preference for a smooth and orderly trial. Counsel is aware of the practice in this Court to direct that 3500 material be provided far enough in advance of trial to permit meaningful confrontation and cross-examination and respectfully request that such an order be entered in this matter.

## POINT 6

### THE GOVERNMENT SHOULD IMMEDIATELY DISCLOSE PRIOR BAD ACT EVIDENCE THAT IT INTENDS TO INTRODUCE AT TRIAL PURSUANT TO FEDERAL RULE OF EVIDENCE 404(B)

Federal Rule of Evidence 404(b) permits the introduction of other acts and crimes at trial to prove things other than a defendant's criminal propensity. The rule's non-exhaustive list of purposes for which other act or crime evidence may be admitted include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See* Fed.R.Evid. 404(b). The Second Circuit has adopted the inclusionary or positive approach to Rule 404(b) – as long as the evidence is not offered to prove propensity, it is admissible. *See United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) (citing *United States v. O'Connor*, 580 F.2d 38, 40 (2d Cir. 1978)). The government, however, must explain in detail the purposes for which the evidence sought is to be admitted. *Id.*

21

Mr. Proscia respectfully requests that the Court order the government to provide the general nature of any evidence of other crimes, wrongs, or acts he purportedly committed that it intends to introduce at trial.

### POINT 7

**FRANK PROSCIA MOVES TO JOIN IN AND ADOPT BY REFERENCE THE MOTIONS OF HIS CO-DEFENDANT**

Pursuant to F.R.Crim.P. 12(b), Mr. Proscia respectfully moves to join in, and adopt by reference, those requests for relief by his co-defendant to the extent that they are neither inconsistent with, nor antagonistic to, his position.

### POINT 8

**FRANK PROSCIA REQUESTS PERMISSION TO MAKE ADDITIONAL MOTIONS THAT MAY BECOME NECESSARY AS A RESULT OF FURTHER DISCOVERY**

Mr. Proscia's counsel anticipates that additional motions may become necessary as review of the discovery in this case progresses and as a trial date approaches. Accordingly, Mr. Proscia requests permission to file such additional motions if and when their necessity becomes apparent.

## IV.  CONCLUSION

For the reasons discussed herein, Mr. Proscia respectfully requests that the case against him be severed from that of his co-defendant because a joint trial will, without a doubt, cause him undue prejudice and will deny him a fair trial. Additionally, fundamental fairness and the

danger of spillover prejudice dictate that Mr. Proscia should be granted a separate trial.  Any limiting instructions the Court could conceivably craft in a joint trial with Mr. Annucci will be insufficient to remove the taint of spillover prejudice, especially in a case where the government alleges Mr. Proscia essentially joined a pre-existing conspiracy that began in 2001.

Mr. Proscia further respectfully requests that the Court dismiss Count Two of the indictment due to a failure to allege a crime; order the government to strike unnecessary, irrelevant, and prejudicial surplusage from the indictment; order the government to provide him with a bill of particulars; order the government to provide him with requested and required discovery; order the government to immediately disclose to him any Federal Rule of Evidence 404(b) evidence; allow Mr. Proscia to join in and adopt by reference the motions of his co-defendant; and permit him to make additional motions that may become necessary as a result of further discovery.

Respectfully submitted,

*Charles A. Ross* (CAR)

CHARLES A. ROSS (CR-1331)
CHARLES A. ROSS & ASSOCIATES, LLC
Attorney for the defendant *Frank Proscia*
111 Broadway, Suite 1401
New York, New York 10006
212.616.3030 (T)
212.616.3031 (F)

Dated: New York, New York
       August 30, 2007